
FILED
2012 Mar-15 PM 02:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ODIS G. ROBERTS,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**COMMISSIONER OF SOCIAL** )<br>**SECURITY** )<br>**ADMINISTRATION,** )<br>)<br>Defendant. ) | Civil Action Number<br>**5:11-cv-182-AKK** |

## MEMORANDUM OPINION

Plaintiff Odis G. Roberts ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

## I. Procedural History

Plaintiff filed his applications for Title II disability insurance benefits and

Title XVI Supplemental Security Income ("SSI") on December 11, 2006, alleging a disability onset date of November 7, 2006, (R. 13), from "lower back and leg pain and cannot read," (R. 84, 88, 102). Plaintiff's disability report alleged also that he is unable to work because he is

> unable to stand/sit/walk for prolonged periods of time, cannot do any repetitive bending, twisting, lifting, numbness in left and right legs, tingling and burning sensation of legs, constant pain, the pain increases with activity - no relief. I have high blood pressure but it is controlled with medication.

(R. 102). After the SSA denied his applications on March 4, 2007, (R. 66, 68), Plaintiff requested a hearing on March 27, 2007, (R. 75), and received one on November 25, 2008, (R. 30). At the time of the hearing, Plaintiff was 55 years old, and had an eighth grade education. (R. 34). His past relevant work included light and unskilled work as a paint line operator and poultry eviscerator, medium and unskilled work as a construction worker, medium and skilled work as a heavy equipment operator and painter, and heavy and unskilled work as a sand blaster. (R. 43-44). Plaintiff has not engaged in substantial gainful activity since February 20, 2005. (R. 91).

The ALJ denied Plaintiff's claims on December 17, 2008, (R. 10), which became the final decision of the Commissioner when the Appeals Council refused to grant review on November 19, 2010, (R. 1). Plaintiff then filed this action

pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

> (4) whether the claimant is unable to perform his or her past work; and
>
> (5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either

fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV.  The ALJ's Decision

In light of Plaintiff's contentions, the obvious starting point here is the ALJ's decision. In that respect, the court notes that, performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset disability date, and therefore met Step One. (R. 15). Next, the ALJ acknowledged that Plaintiff's severe impairments of "degenerative disk disease of the lumbar spine and diabetes mellitus" met Step Two. *Id*. The ALJ then proceeded to the next step and found that Plaintiff did not satisfy Step Three since Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 16). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Plaintiff

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except occasional climbing of ladders/ropes/scaffolds and should avoid unprotected heights and dangerous machinery. He would have sufficient ability to pay attention, concentrate, and adapt in a work environment.

(R. 16). In light of Plaintiff's RFC, the ALJ held that Plaintiff was "capable of performing past relevant work as a paint line operator and poultry eviscerator. This work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC]." (R. 20). As a result, the ALJ answered Step Four in the negative, and determined that Plaintiff is not disabled. (R. 60); *see also McDaniel*, 800 F.2d at 1030. It is this finding that Plaintiff challenges in this action.

## V.  Analysis

The court turns now to Plaintiff's contention that the ALJ committed reversible error because the ALJ failed to find that Plaintiff is disabled under Medical Vocational Rule ("MVR") 201.01, doc. 9 at 6-7, which states that an applicant is disabled if he (1) is limited to sedentary work, (2) is at least 55 years of age, (3) has a limited education, and (4) has unskilled or no previous work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Specifically, Plaintiff contends that he is disabled under this rule because his back and bilateral knee pain, hypertension, type II diabetes, and osteoarthritis require an RFC for sedentary work instead of light work.[2]  Doc. 9 at 6. Based on its review of the

---

[2]Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). In contrast, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it

record, the court disagrees with Plaintiff that the ALJ committed reversible error.

First, Plaintiff's contention that his diabetes restricts him to sedentary work is unpersuasive. In fact, Plaintiff testified unequivocally that his diabetes required no medication and was under control:

> ALJ: Is he on any medications for diabetes? I don't see them on the list.
>
> Plaintiff's counsel: No, that's why we had that discussion about it. He's testifying that his blood sugar level is okay right now.
>
> Plaintiff: They checked it yesterday and everything was okay.
>
> Plaintiff's counsel: You never had insulin, did you?
>
> Plaintiff: No, I never done none of that.
>
> Plaintiff's counsel: You don't have the injections?
>
> Plaintiff: Uh-uh.
>
> Plaintiff's counsel: So we think that's under control then.
>
> Plaintiff: Uh-huh. They just told me to, you know, be easy on my sweets. . . .

(R. 38-39). Therefore, the record does not support Plaintiff's contention that his diabetes dictated a downgrade of his RFC from light to sedentary work.

Likewise, Plaintiff's hypertension and osteoarthritis are also not conditions

---

requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

that limit Plaintiff to sedentary work for several reasons. First, the ALJ did not find that Plaintiff's hypertension and osteoarthritis rose to the level of severe impairments, (R. 15), and Plaintiff does not dispute that finding here. A condition that is not a severe impairment simply cannot qualify as a disabling condition. In fact, Plaintiff admitted in his disability report that his hypertension was "controlled with medication." (R. 102). Second, on October 13, 2006, Plaintiff received a stress test that was negative for "inducible myocardial ischemia," and revealed that Plaintiff had (1) "no arrhythmia during stress or in recovery," (2) "chest tightness with exercise which resolved in recovery," and (3) "normal blood pressure response to exercise with resting blood pressure of 114/80 increased to a peak of 182/92," (R. 170), all of which belie Plaintiff's contention that his hypertension restricts him to sedentary work. Indeed, Plaintiff's hypertension was evaluated at Town Creek Family Practice ("Town Creek") intermittently from May 2005 through September 2008, (R. 182-202, 262-285), and although his blood pressure showed elevation occasionally, the records revealed no indication that Plaintiff had uncontrolled blood pressure. In short, Plaintiff has failed to point to <u>any</u> evidence that his hypertension and osteoarthritis limits him to sedentary work.

      Finally, because Plaintiff contends that his back pain limits him to sedentary work, the court will review Plaintiff's entire medical history regarding his back

pain to ascertain whether it supports Plaintiff's contentions.[3]  In that regard, Dr. Lloyd Johnson, III, ("Dr. Johnson") of the North Alabama Bone and Joint Clinic began evaluating Plaintiff's complaints of low back pain on February 2, 2006.  (R. 208-223).  During that visit, Dr. Johnson noted that Plaintiff complained that his pain prevented him from working, was constant, and "worse with bending, twisting, lifting, sitting, standing, walking, at night, after getting up from a rest, in the morning, at the end of the day, when he first lies down, with coughing, sneezing, straining, driving and jarring."  (R. 221).  Dr. Johnson noted that Plaintiff was "in no acute distress," and that Plaintiff had "some back pain with straight leg raise assessment bilaterally" and pain with lumbar flexion and extension.  (R. 222).  Dr. Johnson diagnosed Plaintiff with "degenerative disc disease of the lumbar spine with some sciatica" and prescribed Plaintiff a Medrol Dosepak for pain and physical therapy.  (R. 223).

A month later, on March 13, 2006, Plaintiff visited Dr. Johnson again and complained of "back, buttock and thigh pain."  (R. 219).  Dr. Johnson's chart entry noted that Plaintiff was "in no acute distress," and that Plaintiff had normal thoracic kyphosis and lumbar lordosis, but "some mild tenderness at the

---

[3]On May 6, 2005, prior to Plaintiff's alleged onset of disability, he received an MRI that revealed "[m]oderated bulging to the L4/5 disc with narrowing of each neural foramen."  (R. 200).

lumbosacral junction." *Id*. Dr. Johnson diagnosed Plaintiff with lumbar stenosis and degenerative disc disease, and prescribed a TENS unit, RS-medical stimulator, and a series of epidural injections. *Id*.

The next month, on April 24, 2006, Plaintiff visited Dr. Johnson with complaints of lumbosacral pain due to a flare up of pain on April 15, 2006, that subsided "over a couple of days". (R. 218). Again, Dr. Johnson noted "no acute distress," and also that Plaintiff was "using an RS Medical stimulator which helps [Plaintiff's pain] significantly." *Id*. Dr. Johnson's physical examination revealed that Plaintiff's "thoracic spine is nontender," and that Plaintiff had "some tenderness in the paraspinal musculature of his lumbar spine." (R. 218). Significantly, Dr. Johnson reported that Plaintiff's "buttock and leg [ ] pain has resolved." *Id*. Dr. Johnson prescribed Plaintiff Naprosyn for pain and physical therapy. *Id*.

Two months later, on June 19, 2006, Dr. Johnson evaluated Plaintiff's "pain at the lumbosacral junction with occasional numbness and tingling down both legs," and ordered a MRI. (R. 217). The June 22, 2006, MRI report noted that Plaintiff had a "bulging and degenerating disc with moderate degenerative spinal stenosis and bilateral foraminal stenosis at L4-5." (R. 216). Plaintiff returned to Dr. Johnson for evaluation of "bilateral leg pain, low back pain" on July 3, 2006,

and Dr. Johnson noted that Plaintiff was "getting more leg pain involving his buttocks bilaterally radiating down his legs and including the thighs and calves," but, again, that Plaintiff was in no acute distress. *Id*. Consequently, Dr. Johnson prescribed Plaintiff a series of epidural injections. *Id*.

The next visit occurred on August 14, 2006, after Plaintiff received three epidural injections.[4] (R. 214). During this visit, Plaintiff complained of low back pain, but according to Dr. Johnson, it did not "seem that [Plaintiff] is getting any pain radiating down the back of the leg that he had before the epidurals," and that Plaintiff's "stenotic type symptoms have seemed to decrease. I have encouraged [Plaintiff] to do his home exercise program as well as start a walking program for his low back pain." *Id*.

Plaintiff next visited with Dr. Johnson on September 26, 2006, during which Plaintiff complained of low back and leg pain, and Dr. Johnson "discussed lumbar decompression with [Plaintiff]. The goal of that surgery would be to decrease pain he's having in his buttocks and thighs. At this time [Plaintiff is not] interested in any surgical intervention." (R. 212).

The final visit to Dr. Johnson occurred on December 26, 2006. (R. 209). Plaintiff complained of back and bilateral leg pain, and Dr. Johnson prescribed

---

[4]There are no medical reports regarding Plaintiff's epidural injections.

Plaintiff Ultram, Naprosyn, and a TENs unit. *Id*.

The next physician who treated Plaintiff is Dr. J. Stephen Howell ("Dr. Howell"). Dr. Howell evaluated Plaintiff on January 2, 2007, and noted that Plaintiff complained of "low back pain, lumbar stenosis, L4-5 disc disease" and that Plaintiff's pain was a grade 5 on a 10 point scale. (R. 204). Plaintiff reported that he "has two new children apparently and that has been an issue as he is having to do a lot more walking, standing, bending, and lifting." *Id*. According to Dr. Howell, Plaintiff's "examination just shows some tenderness in the lumbosacral junction, worse with lumbar extension. [ ] [Plaintiff] does have pain with lumbar extension consistent with stenosis and spondylosis." *Id*. Dr. Howell's "plan" for Plaintiff was to discontinue the Ultram and "[t]ry [Plaintiff] on Ed-Flex one to two twice a day. . . . [Plaintiff] can use heat over his back. . . . [Plaintiff] wants to continue conservative care." *Id*.

The next physician Plaintiff visited for his back pain was Dr. Ahmad Shikh ("Dr. Shikh"), who is the only physician to opine that Plaintiff has disabling pain. The first visit occurred on June 9, 2008, during which Dr. Shikh evaluated Plaintiff for "multiple joint pain" and noted that Plaintiff's pain was a grade 10 on a 10 point scale at its worse, "down to 4-5 on its minimum," and is "aggravated by walking, sitting, and it is relieved by nothing." (R. 260). Dr. Shikh reported that

Plaintiff's daily activities were "moderately limited" by his pain, and that physical therapy "helped a little," and injections "helped for a few days." *Id*. Dr. Shikh diagnosed Plaintiff with arthralgias (joint pain), osteoarthritis, and chronic pain syndrome. (R. 261). Dr. Shikh noted that Plaintiff was to increase his Tramadol dosage, and continue his Mobic,[5] muscle relaxants [Naprosyn], and Plaintiff's home based exercise program for posture and body mechanics training. *Id*.

The next visit to Dr. Shikh occurred on July 9, 2008, during which Plaintiff reported that he was "aching today." (R. 290). Dr. Shikh noted that Plaintiff's "medication some[what] effective now," and diagnosed Plaintiff with arthralgias, osteoarthritis, and chronic pain syndrome. *Id*.

Two months later, on September 5, 2008, Plaintiff again reported to Dr. Shikh that he had pain in his lower back and knee. (R. 289). Significantly, Dr. Shikh noted that Plaintiff's pain improved when Plaintiff took his medication, that Plaintiff's pain rated a 4 on a 10 point scale, and that Plaintiff's activities of daily living were "moderately limited" because he "can do things around the house but must take frequent breaks. He can't keep a job." *Id*. Dr. Shikh advised Plaintiff to continue his current medications and to return in two months. *Id*.

---

[5]Mobic is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis.

On October 20, 2008, Dr. Shikh completed a Clinical Assessment of Pain and noted that Plaintiff's pain is "present to such an extent as to be distracting to adequate performance of daily activities or work" and that physical activity greatly increased Plaintiff's pain to "such a degree as to cause distraction from tasks or total abandonment of tasks." (R. 286). The next day, on October 21, 2008, Dr. Shikh evaluated Plaintiff a final time and noted that Plaintiff had limited range of motion in his knee, (R. 289), arthritis, and that physical therapy "helped a little" and injections "helped for a few days," (R. 288).[6]

Having reviewed Plaintiff's medical history, the court turns now to Plaintiff's contentions that he is limited to sedentary work because of his back pain. The court finds that the record does not support Plaintiff's contention. As a threshold matter, the court notes that Plaintiff failed to challenge the ALJ's decision to give Dr. Shikh's opinion "little weight" because Dr. Shikh "has seen [Plaintiff] on only a limited number of office visits," and Dr. Shikh's "office notes conflict with the limitations Dr. Shikh opined in the Pain Questionnaire," (R. 18-

---

[6]Plaintiff was evaluated also by Town Creek physicians and consulting physician, Dr. Stuart Stephenson ("Dr. Stephenson"). The Town Creek physicians prescribed Plaintiff pain medications for his back and leg pain, (R. 185, 186, 187, 191, 277, 274, 273, 267, 266), and referred Plaintiff to Dr. Johnson for treatment of his pain, (R. 189, 186, 270). Dr. Stephenson evaluated Plaintiff's medical records on February 22, 2007, and opined that Plaintiff could perform medium work. (R. 224-232). However, the ALJ assigned Dr. Stephenson's opinion "little weight" because "a light [RFC] is more consistent with the record." (R. 19).

19).  Indeed, Dr. Shikh opined that Plaintiff's pain prevented him from working, which was inconsistent with Dr. Shikh's own clinical findings that Plaintiff's pain improved with medication, graded a 4 on a 10 point scale, and that Plaintiff's pain moderately limited his daily activities.  Therefore, the ALJ did not err in assigning Dr. Shikh's opinion "little weight."  *See* 20 C.F.R. § 404.1527(d).

The rest of Plaintiff's medical records fail also to support Plaintiff's contention that he can only do sedentary work.  First, and tellingly, Plaintiff failed to provide <u>any</u> medical evidence to support his contention and this court has found none.  Second, Plaintiff's physicians did not restrict him to lifting a maximum of 10 pounds, as required by sedentary work, and, in fact, Plaintiff admitted to lifting his young children.  Third, Plaintiff's treating physician, Dr. Johnson, noted frequently that Plaintiff was "in no acute distress," encouraged Plaintiff to exercise, prescribed physical therapy, and diagnosed him with only mild stenosis.  Fourth, Dr. Howell's physical examination revealed "some tenderness" that was worsened by lumbar extension.  Further, this record reflects that Plaintiff's pain is controlled with medication and physical therapy.  Indeed, Plaintiff chose to stay with conservative treatment and rejected surgery, which suggests some degree of satisfaction with his treatment.  Finally, the objective medical evidence does not support Plaintiff's contention because Plaintiff's MRI revealed only "moderate

degenerative spinal stenosis and bilateral foraminal stenosis" and Plaintiff experienced only mild tenderness to palpitation in his lumbosacral area.

In sum, Plaintiff did not meet his burden to show that he was limited to sedentary work. The ALJ's determination that Plaintiff can perform light work is supported by substantial evidence, and Plaintiff does not meet MVR 201.12. As such, Plaintiff's request for a sentence four remand is **DENIED**.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 15th day of March, 2012.

_____
   **ABDUL K. KALLON**
   UNITED STATES DISTRICT JUDGE